EILEEN R. RIDLEY, CA BAR NO. 151735
eridley@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

JAMI A. GEKAS, (*Pro Hac Vice to be filed*)
jgekas@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET
SUITE 2800
CHICAGO , IL 60654-5313
TELEPHONE: 312.832.4500
FACSIMILE: 312.832.4700

ROBERT S. WEISBEIN (*Pro Hac Vice to be filed*)
rweisbein@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016-1314
TELEPHONE: 212.682.7474
FACSIMILE: 212.687.2329

Attorneys for Plaintiff CHEGG, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHEGG, INC.,<br><br>PLAINTIFF,<br><br>v.<br><br>JOHN DOE<br><br>DEFENDANT. | CASE NO: 19-cv-7511<br><br>**PLAINTIFF CHEGG INC.'S COMPLAINT FOR VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, VIOLATIONS OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, BREACH OF CONTRACT, AND TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chegg, Inc. ("**Chegg**") makes the following allegations against Defendant John Doe:

## PARTIES

1. Plaintiff Chegg is a domestic corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3990 Freedom Circle, Santa Clara, California 95054.

2. The true identity of Defendant John Doe (hereinafter "**Defendant**") is unknown, but upon information and belief is the individual or entity that owns or controls the domain names <text-sheet.com> and <hwhaven.com>, as well as the associated website available at the URLs http://www.text-sheet.com and https://hwhaven.com (**"hwHaven**"). Upon information and belief, further details obtained in discovery from third party service providers such as 1&1 Ionos, Inc., Cloudflare, Inc., NameCheap, Inc., Patreon, Inc., and Vitalwerks Internet Solutions, LLC will lead to the full identification of Defendant.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action alleges violations of federal statutes, including the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)). The Court has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because Defendant directs business activities toward and conducts business with consumers within this Judicial District through at least the interactive, commercial website hwHaven. Furthermore, among other acts, Defendant unlawfully accessed and used Chegg's computers and servers located in this District in order to operate and offer its illicit services.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District. Among other acts, Defendant unlawfully accessed and used Chegg's computers and servers in this District to operate and offer its illicit services.

6. Jurisdiction and venue are also proper in this Court under California Penal Code 520(j), which states: "For purposes of bringing a civil or criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, computer network in each jurisdiction."

## BACKGROUND

### A. Introduction

7. Chegg is a leading direct-to-student connected learning platform, supporting students on their educational journey from high school to college and into their careers, with proprietary technology and tools to help students learn, grow and excel.

8. Billing itself as the "Smarter Way to Student™," Chegg makes its services available online, anytime and anywhere throughout the U.S., so that its users can access Chegg's resources whenever they are needed. Chegg's learning platform has been designed to deliver a meaningful and personalized experience to each of Chegg's millions of student customers. As a direct result of Chegg's quality products and services, high level of customer service, and its demonstrated commitment to improving the educational outcomes of all students, Chegg is very well-known and highly-regarded on college campuses throughout the country.

9. With full knowledge of Chegg's reach, renown and goodwill among students and the popularity of Chegg's platform and services, Defendant has engaged in systematic and widespread theft of millions of pieces of proprietary content developed by Chegg over many years and available only to Chegg's subscribers. In other words, rather than develop its own products or services, Defendant is making money by stealing from Chegg.

10. Defendant's wholesale appropriation of Chegg's content for its own financial gain has forced Chegg to bring this legal action against Defendant to stop the theft of its proprietary content, and diversion of its paying customers and potential customers to Defendant's own website.

**B. Chegg and the Chegg Study® Homework Help Service**

11. Chegg's online tools have all been developed to help students learn more effectively and efficiently. Through Chegg's proprietary online platforms students can access educational information, tools, and resources such as live online tutoring, writing tools for proofreading essays and creating bibliographies to correctly cite their research sources, interactive programs that explain math concepts, and online textbook rentals. Chegg offers its services via its multiple websites, one of which can be accessed from the URL http://www.chegg.com (the "**Chegg Website**" or "**Chegg.com**").

12. Chegg is particularly well-known for its Chegg Study® service, which helps students to master challenging concepts on their own. Through Chegg Study, users can access Chegg's massive library of millions of proprietary step-by-step solutions to homework and study questions. For high demand print textbooks and eTextbooks, primarily in the subjects of sciences, technology, engineering, mathematics, statistics, business and economics, Chegg offers "Textbook Solutions," which are step-by-step explanations that help students understand how to solve the questions and master the subject matter from their textbooks and course materials. Users can also submit problems not covered in textbooks to Chegg's subject matter experts, who provide proprietary step-by-step guided solutions to those questions, known as "Expert Answers." Both the "Textbook Solutions" and the "Expert Answers" (collectively, "**Chegg Content**"), all of which have been created by Chegg over many years and together comprise more than 25 million independent solutions, are available exclusively to Chegg's subscribers, immediately upon subscription. Samples of Chegg Content can be viewed below and in **Exhibit A** to this Complaint.



13. Chegg has invested an enormous amount of time and money, over many years, to develop, maintain, and expand its database of high-quality, user-friendly, proprietary educational resources.

14. As an initial matter, Chegg has paid many millions of dollars to license textbook questions from educational textbook publishers, allowing Chegg the right to use and reproduce questions from the publishers' copyrighted textbooks on Chegg.com.

15. Further, Chegg has worked tirelessly with thousands of subject matter experts to create unique, original and substantively rich teaching materials. Chegg's own research and feedback from customers has confirmed that students are not interested in just being told the final answers; they want to *learn*. For that reason, Chegg Study solutions are both independently created and "guided," meaning that they actually walk students through a

step-by-step analysis of question and solution, to ***teach*** the user how to arrive at the correct solution.

16. Chegg's substantial investment in its database of such solutions is ongoing – it adds new material to the Chegg Study service on a daily basis. Furthermore, Chegg employs stringent quality control measures to ensure that the Chegg Content is accurate, fulsome, and up-to-date. As a result, the Chegg Study service is not only beloved by students, but also has high profit margin, and forms a core component of Chegg's business.

17. To access the Chegg Study service, and other resources on Chegg.com, student users pay Chegg a monthly subscription fee. Each user then creates a unique username and password that allows him or her access to Chegg's services. These login credentials are personal to each user, and shared access is strictly prohibited under Chegg's Terms of Use. Chegg Study may be accessed from Chegg.com as well as Chegg's mobile application.

**C. The Chegg Terms of Use Govern Access to Chegg.com and Chegg Study®**

18. As a condition of access to Chegg's services, including Chegg.com and the Chegg Study service, users must agree to Chegg's Terms of Use (the "**Terms of Use**"). The Terms of Use are attached as **Exhibit B** to this Complaint.

19. Chegg's Terms of Use include, without limitation, the following terms:

- **Account Registration & Termination**: ". . . you may not share your account or any of the Services with others."
- **Proprietary Rights**: "Any unauthorized use of Chegg Content is prohibited."
- **Your License to Chegg Content**: "You agree not to view, copy, or procure content or information from the Services by automated means . . . to frame, mask, extract data or other materials from the Chegg Content. . . No materials from the Services may be copied, reproduced, modified, republished, downloaded, uploaded, posted, transmitted, or distributed in any form or by any means without Chegg's prior written permission."

**D. The CHEGG Marks**

20. Since at least as early as 2003, Chegg, or its predecessor in interest, has exclusively used the coined and inherently distinctive mark CHEGG to brand Chegg's tutoring, homework help, textbook rental, and other related educational and entertainment services and products. Chegg has acquired numerous U.S. federal trademark registrations, including, but not limited to the following registrations (the "CHEGG Marks"):

- 5,058,869    CHEGG
- 4,777,915    CHEGG STUDY
- 4,021,925    CHEGG
- 3,970,742    CHEGG.COM
- 3,191,844    CHEGG

True and correct copies of the certificates of registration for these trademarks are attached as **Exhibit C**. Three of these marks have become "incontestable" under section 15 of the Lanham Act, 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence of Chegg's exclusive right to use those marks in commerce.

21. The registrations identified above cover goods and services including, *inter alia*, "Educational services, namely, providing on-line learning resources in the nature of study guides, study materials and personal study assistance for students of primary, secondary and college levels," and "providing mentoring, tutoring, and instruction in a wide variety of subjects . . ."

22. Chegg has invested a substantial amount of time and resources to promote and advertise the inherently distinctive CHEGG Marks, and the goods and services associated therewith. Chegg markets its tutoring and other educational services to consumers throughout the United States. Since 2014, Chegg has spent more than $200 million to advertise and promote its goods and services under the CHEGG Marks. As a result, Chegg has developed valuable goodwill and an outstanding reputation in the CHEGG Marks. The CHEGG Marks are extremely well-known among students in the United States and have become exclusively associated in the minds of the consuming public with a single source, namely, Chegg.

**E.    Defendant's Unauthorized Activities**

23.    Defendant is the individual or entity that owns or controls the domain names <text-sheet.com> and <hwhaven.com> and the hwHaven websites.  Upon information and belief, the hwHaven website was previously named "Cheggg" and was accessible at the domain <cheggg.zapto.org>.

24.    Defendant's identity is not readily discernable because the registrant information for the domain names <text-sheet.com> and <hwhaven.com> are hidden.

25.    A true and correct copy of the relevant WHOIS look-up for the domain name <text-sheet.com>, accessed on November 12, 2019, is attached as **Exhibit D** to this Complaint.

26.    A true and correct copy of the relevant WHOIS look-up for the domain name <hwhaven.com>, accessed on November 14, 2019, is attached as **Exhibit E** to this Complaint.

27.    Upon information and belief, the registrar of the <text-sheet.com> domain name is an entity called 1&1 Ionos, Inc..

28.    Upon information and belief, Defendant's <cheggg.zapto.org> domain was provided by Vitalwerks Internet Solutions, LLC d/b/a No-IP.com.

29.    Upon information and belief, the registrar of the <hwhaven.com> domain name is an entity called Namecheap, Inc., and the hwHaven website uses a reverse proxy service provided by Cloudflare, Inc.

30.    hwHaven provides a platform that enables its users to circumvent Chegg's paywall, and access proprietary Chegg Study homework help solutions without a subscription.  Visitors to hwHaven are prompted to ask a question.  An image of the hwHaven homepage is reproduced below:



31.  After entering a question in the text box, the user clicks the "Search" button and is then presented with a list of relevant solutions.  The user can then select one of the search results and is presented – free of charge – with a verbatim copy of the relevant and proprietary Chegg Content stolen from behind the paywall on the Chegg Website.  Examples of such webpages on hwHaven containing unauthorized, verbatim copies of certain Chegg Content are attached as **Exhibit F** to the Complaint, and images from **Exhibits A** and **F** are reproduced below to demonstrate that hwHaven displays a verbatim copy of the protected Chegg Content.

Public Version of Chegg Study Solution



Subscription Only Version of Chegg Study Solution



Verbatim Copy of Subscription Only Chegg Solution displayed on hwHaven

hwHaven

Join our Discord!

hwHaven

The non-profit answers site

Question

Load full question

Rating: 0/0

Give an example when a missing values in a dataset may be useful? Subject - Data Mining & Visualisation.

Answer

In statistics, missing values generally fall into one of two categories: those values that are missing at random, and those values that are not missing at random. For this article, we're focusing on the second case. Sometimes a new variable marking when a variable is missing can be just as predictive and informational as having the variable itself.

When missingness is not random, there is usually an underlying explanation. The explanation may vary widely depending on the type of analysis you're performing, but trying to understand how missing values could be representing characteristics of your underlying population will help you to avoid bias when carrying out your analysis.

Sometimes a variable may be missing due to the way that information is collected. For example, if data comes from direct contact with a constituent, they might choose not to give you their home phone number, which would result in a missing value. In this case, whether or not you have certain information about a constituent can be very telling – choosing to provide both a cell phone number and an email address, for example, might mean that they are more open to being contacted. So, while a cell phone number and an email address might be marginally useful in a model (if we focused on area code and email provider, perhaps), a variable marking the presence or absence of this information could be very useful as an indicator of connectedness or openness. By creating a binary variable to represent what information we have about a constituent, we can get an idea of when a missing value is actually valuable information in and of itself.

32. This Chegg Content is only available from Chegg to Chegg subscribers. Chegg does not license its Chegg Content to any third-party, so there is no legitimate way for Defendant to obtain the Chegg Content and display it on hwHaven.

33. Therefore, Defendant is intentionally distributing Chegg Content without authorization to individuals who do not subscribe to Chegg's services so that they may access the proprietary Chegg Content without paying for those services.

34. Defendant is not, and never has been, authorized to copy, display, distribute or obtain and/or provide any access whatsoever to the proprietary Chegg Study homework help materials, or any other Chegg Content.

35. Upon information and belief, when an individual enters a question into the search field on hwHaven, Defendant's website accesses Chegg's proprietary materials and then reproduces and displays the relevant Chegg Content to the individual.

36. Defendant's actions are knowing, intentional, willful, malicious, and fraudulent.

37. Upon information and belief, Defendant accepts donations and offers additional features for accessing proprietary Chegg Content to users who contribute money to the website. The hwHaven homepage offers several options for making donations of crypto currency and also asks users to "Become a patron." Upon clicking the "Become a patron" button on hwHaven, the user is taken to Defendant's Patreon profile. Patreon is a third party website that provides crowdfunding services for others. Defendant's Patreon profile allows users to contribute either $2 a month or $5 a month, which gives the user access to certain features such as "better support," "direct links," and "access to textbook answers dumping." Improved access to Chegg Content is the incentive for users to subscribe through Patreon. In at least this way, Defendant monetizes its theft of the Chegg Content. A screenshot of Defendant's Patreon profile is shown below and in **Exhibit G.**



38. Chegg has been and continues to be damaged by Defendant's actions because consumers who would otherwise purchase a subscription from Chegg may use hwHaven to acquire Chegg Content for free. This results in lost subscription revenue to Chegg, as well as the lost opportunity to cross-sell Chegg's complementary products and services through Chegg.com.

39. Information to quantify the extent of the harm to Chegg is currently in the possession and control of Defendant. Nonetheless, upon information and belief, there are at least 800 members of an online chat channel associated with hwHaven.

40. Chegg has been further damaged because Defendant was, until only days before the filing of this complaint, infringing upon the CHEGG Marks. Before being named hwHaven, Defendant's website was named "Cheggg." Defendant, without authorization, displayed the CHEGG Marks and the confusingly similar CHEGGG mark in a manner likely to have confused consumers as to its association, affiliation, endorsement or sponsorship with or by Chegg. Such unauthorized and confusing use of these marks has irreparably damaged Chegg and the goodwill it enjoys in the CHEGG Marks. A screenshot of Defendant's website when it was named "Cheggg" is shown below and in **Exhibit H**.



**COUNT ONE**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**

41. Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

42. Chegg's computers are involved in interstate and foreign commerce and communication, and are protected computers as defined under 18 U.S.C. § 1030(e)(2).

43. On information and belief, Defendant knowingly and intentionally accessed, and continues to access, Chegg's computers without authorization or in excess of authorization as defined by Chegg's Terms of Use.

44. On information and belief, after gaining unauthorized access to Chegg's computers, Defendant obtained and used valuable information from Chegg's computers in transactions involving interstate or foreign commerce. The information included Chegg's proprietary material in the form of solutions to homework questions and problems, and Defendant used this information by displaying it on its website in response to requests from its users.

45. Defendant knowingly, willfully, and with an intent to defraud accessed Chegg's computers without authorization or in excess of authorization and obtained valuable information from Chegg's computers that, on information and belief, Defendant used to obtain something of value.

46. All of Defendant's unlawful and unauthorized access and other wrongful conduct continues to this day.

47. Defendant's conduct is for the purpose of private financial gain and has caused a loss to Chegg during a one-year period in excess of $5,000. These losses will increase as time goes on.

48. Chegg has been and continues to be damaged by Defendant's actions, including by being forced to expend resources to investigate the unauthorized access and abuse of its computer network, as well as by the loss of customers who would otherwise have subscribed to Chegg's platform and the loss of the continuing revenue streams

associated with such lost customers. Chegg seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

49. Chegg has suffered irreparable and incalculable harm and injuries resulting from Defendant's conduct, which harm will continue unless Defendant is enjoined from further unauthorized use of Chegg's protected computers. Chegg has no adequate remedy at law.

**COUNT TWO**
**CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502**

50. Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

51. Defendant knowingly accessed, continues to access, and without permission used and continues to use, Chegg data, computers, computer systems and/or computer networks in order to devise and/or execute a scheme to defraud and deceive or to wrongfully obtain data in violation of California Penal Code § 502(c)(1).

52. Defendant knowingly accessed and without permission took, copied, and/or used, and continues to take, copy, and/or use, data from Chegg's computers, computer systems and/or computer networks in violation of California Penal Code § 502(c)(2).

53. Defendant knowingly and without permission used or caused to be used Chegg's computer services in violation of California Penal Code § 502(c)(3).

54. Defendant knowingly and without permission provided or assisted in providing a means of accessing Chegg's computers, computer systems and/or computer networks to allow others to wrongfully obtain, take, copy, or use Chegg's data and without permission use Chegg's computer services in violation of California Penal Code § 502(c)(6).

55. All of Defendant's unlawful conduct in violation of California Penal Code § 502(c)(6) continues to this day.

56. Chegg suffered and continues to suffer damage as a result of Defendant's violations of California Penal Code § 502 identified above.

57.     Defendant's conduct also caused irreparable and incalculable harm and injuries to Chegg, and unless enjoined, will cause further irreparable and incalculable injury, for which Chegg has no adequate remedy at law.

58.     Defendant willfully violated California Penal Code § 502 in disregard and derogation of Chegg's rights, and Defendant's actions as alleged above were carried out with oppression, fraud and malice.

59.     Pursuant to California Penal Code § 502(e), Chegg is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs and other equitable relief.

## COUNT THREE
## BREACH OF CONTRACT

60.     Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

61.     Use of Chegg's platform and services is governed by and subject to Chegg's Terms of Use.  All users of Chegg.com must agree to the Terms of Use as a condition of their use of Chegg's services and content, regardless of whether they register with the site or merely visit it as a guest.  The Terms of Use apply regardless of whether a user accesses Chegg.com by computer, mobile device or otherwise, and whether the access is direct or through a third-party website or server.

62.     In order to access Chegg's proprietary solutions to homework questions and problems, users must create an account and subscribe to Chegg's services.  During the account creation process, users are expressly put on notice that their access to Chegg's services is subject to Chegg's Terms of Use:

Create Account

By clicking "Create account" you agree to the Terms and Privacy Policy

Already have an account? Sign in

63. Chegg's Terms of Use explicitly prohibit users of Chegg.com from sharing their account or any services, copying and reproducing Chegg Content, and using automated means to view or copy Chegg Content.

64. Defendant has willfully and repeatedly breached the Terms of Use by collecting, copying, and reproducing proprietary Chegg Content on hwHaven and by effectively sharing its accounts and Chegg's services with others.

65. Defendant's conduct has damaged Chegg, and has caused and continues to cause, irreparable and incalculable harm and injury to Chegg.

66. Chegg is therefore entitled to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief.

## COUNT FOUR
## TRADEMARK INFRINGEMENT

67. Chegg realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

68. Chegg owns numerous U.S. federal registrations for the CHEGG mark and variations thereof, including U.S. Registration Nos. 5,058,869; 4,777,915; 4,021,925; 3,970,742; 4,485,490; 3,191,844. These registrations are in full force and effect and are enforceable. Registration Nos. 4,021,925, 3,970,742, and 3,191,844 have become incontestable under section 15 of the Lanham Act, 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence of Chegg's exclusive right to use those marks in commerce in connection with the products and services identified in those registrations.

69. Defendant displayed the CHEGG mark and the confusingly similar CHEGGG mark on its website, and this use in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the services offered by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval by Chegg.

70. The foregoing acts of Defendant constitute false designation of origin, association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a).

71. Defendant's actions also constitute the use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of Chegg in connection with the sale, offering for sale, distribution, or advertising of services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

72. Upon information and belief, Defendant has engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of Chegg's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

73. Chegg has been damaged, and Defendant has been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

74. In addition, Defendant's conduct described herein has caused and, if not enjoined, may, if Defendant begins using the mark again in the future, cause irreparable damage to Chegg's rights in its marks, and to the positive reputation and goodwill of Chegg, which cannot be adequately compensated solely by monetary damages. Chegg therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## JURY DEMAND

75. Chegg requests a trial by jury on all claims so triable.

## RELIEF REQUESTED

76. Chegg respectfully requests that judgment be entered in its favor and against Defendant on all counts.

77. Chegg requests that the Court issue preliminary, interim and permanent injunctive relief, enjoining and restraining Defendant and its agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

   A. Accessing or attempting to access Chegg's website and protected computer systems for any purposes whatsoever;

   B. Using any accounts, creating any new accounts, or taking over any existing accounts, on Chegg.com, for any purposes whatsoever;

   C. Assisting, instructing, or providing a means for, others to access Chegg's website and computer systems in excess of authorization;

   D. Using or reproducing Chegg's proprietary "Chegg Study" materials anywhere or in any way;

   E. Using the CHEGG Marks or any other name or mark in a manner which is likely to cause the public to be confused as to the source or sponsorship of Defendant's products, services, or websites; and

   F. Otherwise further diluting or infringing the CHEGG Marks.

78. Chegg further requests that the Court order the following additional non-monetary relief:

   A. Destruction of all copies of Chegg's proprietary materials unlawfully obtained by Defendant, whether same are in the custody or control of Defendant or its employees, agents, assigns, or the third-party service providers (including, without limitation, web hosts, proxy servers, privacy services and domain registrars);

   B. A detailed accounting of web traffic, web analytics, and revenues obtained directly or indirectly by Defendant and/or its agents as a direct

or indirect result of the unlawful copying of Chegg's proprietary content;

C. Identification of each and every Chegg account and user name ever used or controlled by Defendant, or any of its employees, agents, and assigns, to engage in the complained-of conduct or for any other purposes whatsoever; and

D. That Defendant certify and confirm, in writing and under oath, within thirty (30) days of the issuance of any order of the Court providing a remedy to Chegg, that Defendant has complied fully and completely with all requirements of such order.

79. Chegg further requests that the court award to Chegg as permitted by law and in such amounts to be proven at trial:

A. Monetary damages, including but not limited to compensatory, statutory, and punitive damages;

B. Defendant's profits;

C. Punitive or exemplary damages;

D. Chegg's reasonable costs, including reasonable attorneys' fees; and

E. Pre and post-judgment interest.

80. Chegg further requests such other relief as the Court may deem just and proper.

DATED: November 14, 2019

**FOLEY & LARDNER LLP**

/s/ Eileen R. Ridley
EILEEN R. RIDLEY, CA BAR NO. 151735
JAMI A. GEKAS (*Pro Hac Vice to be filed*)
ROBERT S. WEISBEIN *(Pro Hac Vice to be filed)*

Attorneys for Plaintiff
CHEGG, INC.